**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO**.

AUDRA WEST,

               Plaintiff,

v.

SHERIFF SCOTT ISRAEL, as Sheriff of Broward County, and
KRISTEN CONNELLY, individually,
HENRY LAWRENCE, individually,
MARK SANDERS, individually,
JOYCE JOHNSON, individually, and
DOROTHY JENKINS, individually,

               Defendants.

_____/

## COMPLAINT

PLAINTIFF, AUDRA WEST, by and through undersigned counsel, hereby sues SCOTT

ISRAEL, as Sheriff of Broward County, Florida; KRISTEN CONNELLY, individually; HENRY

LAWRENCE, individually; MARK SANDERS, individually; JOYCE JOHNSON, individually; and

DOROTHY JENKINS, individually, (collectively "DEFENDANTS"), and, in support thereof,

alleges as follows:

      1)     This a civil action seeking money damages in excess of $15,000 dollars, exclusive

of costs, interest, and attorney's fees, against the DEFENDANTS.

      2)     At all times material, PLAINTIFF, AUDRA WEST ("WEST" or "PLAINTIFF"), was

over eighteen (18) years of age and is otherwise *sui juris*.

3)      At all times material, Defendant, SCOTT ISRAEL ("SHERIFF"or "BSO") was the Sheriff of Broward County, Florida, and is otherwise *sui juris*. ISRAEL is sued in his official capacity.

4)      At all times material, Defendant, KRISTEN CONNELLY ("CONNELLY"), was over eighteen (18) years of age and was otherwise *sui juris*. At all times material, CONNELLY was an employee, agent and a law enforcement officer of BSO and is being sued in her individual capacity. At all times material, CONNELLY was acting under the color of state law.

5)      At all times material, Defendant, HENRY LAWRENCE ("LAWRENCE"), was over eighteen (18) years of age and was otherwise *sui juris*. At all times material, LAWRENCE was an employee, agent and a law enforcement officer of BSO and is being sued in his individual capacity. At all times material, LAWRENCE was acting under the color of state law.

6)      At all times material, Defendant, MARK SANDERS ("SANDERS"), was over eighteen (18) years of age and was otherwise *sui juris*. At all times material, SANDERS was an employee, agent and a law enforcement officer of BSO and is being sued in his individual capacity. At all times material, SANDERS was acting under the color of state law.

7)      At all times material, Defendant, JOYCE JOHNSON ("JOHNSON"), was over eighteen (18) years of age and was otherwise *sui juris*. At all times material, JOHNSON was an employee, agent and a law enforcement officer of BSO and is being sued in her individual capacity. At all times material, JOHNSON was acting under the color of state law.

8)      At all times material, Defendant, DOROTHY JENKINS ("JENKINS"), was over eighteen (18) years of age and was otherwise *sui juris*. At all times material, JENKINS was an

2

employee, agent and a law enforcement officer of BSO and is being sued in her individual capacity. At all times material, JENKINS was acting under the color of state law.

## JURISDICTION

9)      This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the First, Fourth Fifth and Fourteenth Amendments to the United States Constitution. The United States District Court for the Southern District of Florida has jurisdiction of this action under 42 U.S.C. § 1983, 28 U.S.C. § 1331, and 28 U.S.C. § 1343. PLAINTIFF further invokes the supplemental jurisdiction of the United States District Court to hear pendant state tort claims arising under state law, pursuant to 28 U.S.C. § 1367(a).

10)      All relevant events in this matter occurred in Broward County in the Southern District of Florida.

11)      PLAINTIFF presented her claims in writing to DEFENDANT SHERIFF by means of a letter of demand for damages pursuant to the provisions of Florida Statute § 768.28 within three (3) years of the accrual of cause of action.

12)      DEFENDANT SHERIFF never made final disposition of the written claims of PLAINTIFF within six (6) months of their presentation.

13)      PLAINTIFF retained undersigned counsel to represent her in this matter and she agreed to pay counsel a reasonable fee for his services herein.

## FACTS

14)     On April 2, 2014, WEST was arrested by the Ft. Lauderdale Police Department for disorderly intoxication, trespass and resisting arrest without violence in the early morning hours.

15)     When WEST was arrested she was wearing a bikini top and bottom, and a skirt.

16)     On May 6, 2014, the Ft. Lauderdale City Prosecutor announced that no formal charges would be filed. Accordingly, WEST was never convicted of any of the crimes charged in that arrest.

17)     After WEST was arrested, the police took her to the Broward County main jail in Ft. Lauderdale where she was booked and processed.

18)     The SHERIFF designated different colors and styles of jail uniforms for each of the jail facilities.

19)     WEST was given a uniform designated for that facility and she changed into that uniform. The bikini top and bottom, and skirt were taken away. WEST was not provided any undergarments,

20)     Later in that morning the SHERIFF transferred her and transported her to the jail facility in Pompano Beach.

21)     After arriving at that facility, WEST was placed into a waiting area.

22)     WEST was wearing a uniform designated for the main jail facility in Ft. Lauderdale from where she was transported.

23)     Before she could be placed within the Pompano Beach (PB) jail facility, WEST would be required to change into a uniform designated for that facility.

4

24)     While WEST was seated in the waiting area, she was having her menstrual period including having blood dripping down her legs.

25)     DEFENDANT CONNELLY was seated across the waiting room behind a desk.

26)     WEST asked CONNELLY for a sanitary pad or tampon ("sanitary product").

27)     CONNELLY told WEST that WEST had to ask CONNELLY nicely in order to get the sanitary product.

28)     WEST repeated her request using the word "please."

29)     CONNELLY told WEST that she still was not getting the sanitary product.

30)     WEST said under her breath "F _ _ k you."

31)     CONNELLY heard WEST's remark and asked WEST what she said. WEST repeated "F _ _ k you."

32)     As a result, CONNELLY stood up, came around the desk and proceeded to the area on the other side of the waiting area where WEST was seated.

33)     DEFENDANT LAWRENCE was in the waiting area and heard and observed all.

34)     DEFENDANT LAWRENCE concluded that CONNELLY would unlawfully, illegally and improperly use physical force on WEST in retaliation for WEST's comments of "F _ _ k you."

35)     LAWRENCE stepped in front of CONNELLY to prevent CONNELLY from walking toward WEST. LAWRENCE spoke to CONNELLY suggesting that CONNELLY not go to WEST nor take any physical actions against WEST.

36)     CONNELLY responded to LAWRENCE and LAWRENCE stepped aside allowing CONNELLY to proceed towards WEST.

37)     At that time, LAWRENCE observed a trusty entering the waiting area pushing a laundry cart.

38)     In anticipation that CONNELLY would act violently toward WEST, LAWRENCE ordered the trusty to remove the laundry cart as well as himself from the waiting area.

39)     CONNELLY approached WEST and encountered her. CONNELLY grabbed WEST and flung her across the room into furniture and other objects.

40)     At no time, did WEST make any remarks, movements, gestures or take any actions that would indicate she would cause harm to herself or others.

41)     At no time ,did WEST threaten CONNELLY or make any movements or gestures or take any actions which would create the fear of any imminent physical harm or contact to CONNELLY.

42)     At no time, did WEST threaten LAWRENCE or make any movements or gestures or take any actions which would create the fear of any imminent physical harm or contact to LAWRENCE.

43)     At no time, did WEST threaten anyone or make any movements or gestures or take any actions which would create the fear of any imminent physical harm or contact to anyone.

44)     LAWRENCE and CONNELLY were the only deputies and only non-inmates in the waiting area.

45)     Despite seeing that it was CONNELLY who attacked WEST without provocation, just cause or legal cause, LAWRENCE assisted CONNELLY in her actions in striking, hitting and pummeling WEST and tossing and throwing WEST.

6

46)     LAWRENCE also struck, hit and pummeled WEST and tossed and threw WEST.

47)     At no time, did LAWRENCE take any action to stop CONNELLY from taking any of her actions against WEST.

48)     At all times, LAWRENCE had a realistic opportunity to intervene and prevent that harm from being committed by CONNELLY against WEST.

49)     At all times, LAWRENCE knew that WEST's constitutional rights against excessive force were being violated and he did not take reasonable steps to intervene.

50)     LAWRENCE assisted CONNELLY in taking WEST into a private room where there were no video cameras, surveillance devices or recordings of any kind.

51)     All physical actions taken by CONNELLY and LAWRENCE against WEST were clearly excessive and without just, legal and legitimate cause.

52)     When taking WEST into the private room, CONNELLY and LAWRENCE used extreme, excessive, unwarranted and illegal force on WEST.

53)     LAWRENCE also went into the room with CONNELLY and exited shortly thereafter.

54)     After LAWRENCE and CONNELLY took WEST into the room, DEFENDANTS JOHNSON and JENKINS ran into the room.

55)     After JOHNSON and JENKINS entered the room, LAWRENCE exited the room.

56)     JOHNSON and JENKINS assisted CONNELLY in her actions in striking, hitting and pummeling WEST and tossing and throwing WEST.

7

57)     JOHNSON and JENKINS also struck, hit and pummeled WEST and tossed and threw WEST.

58)     LAWRENCE knew or should have known that CONNELLY would continue her actions in striking, hitting and pummeling WEST and tossing and throwing WEST and he took no action to prevent that.

59)     At all times, LAWRENCE had a realistic opportunity to intervene and prevent all harm from being committed by CONNELLY, JOHNSON and JENKINS against WEST.

60)     LAWRENCE knew that WEST's constitutional rights against excessive force were being violated by CONNELLY and he did not take reasonable steps to intervene.

61)     When LAWRENCE exited the room, WEST was not handcuffed.

62)     LAWRENCE also knew or should have known that JOHNSON and JENKINS would assist CONNELLY in continuing her actions in striking, hitting and pummeling WEST and tossing and throwing WEST.

63)     LAWRENCE also knew or should have known that JOHNSON and JENKINS would strike, hit and pummel WEST and toss and throw WEST.

64)     LAWRENCE knew or should have known that WEST's constitutional rights against excessive force were being violated by JOHNSON and JENKINS and he did not take reasonable steps to intervene.

65)     At no time did DEFENDANTS JOHNSON and JENKINS take any action to stop each other and CONNELLY from taking any of each others' actions against WEST.

8

66 )     JOHNSON had a realistic opportunity to intervene and prevent the harm committed by CONNELLY and JENKINS.

67)     JOHNSON knew that WEST's constitutional rights against excessive force were being violated by JENKINS and CONNELLY and she did not take reasonable steps to intervene.

68)     JENKINS had a realistic opportunity to intervene and prevent the harm committed by CONNELLY and JENKINS.

69)     JENKINS knew that WEST's constitutional rights against excessive force were being violated by JENKINS AND CONNELLY and she did not take reasonable steps to intervene.

70)     Throughout the time WEST was in the private room, screams, thuds and banging emanating from the room could be clearly heard in the waiting area.

71)     While DEFENDANTS JOHNSON, CONNELLY and JENKINS were in the private room, DEFENDANT SANDERS came to the window in the door of the private room and looked into the room. SANDERS observed JOHNSON, JENKINS and CONNELLY striking, hitting and pummeling WEST and tossing and throwing WEST.

72)     SANDERS and LAWRENCE were also able to clearly hear the screams, thuds and banging coming from the room.

73)     At no time did DEFENDANT SANDERS take any action to stop JOHNSON, JENKINS and CONNELLY from striking, hitting and pummeling WEST and tossing and throwing WEST.

74)     SANDERS had a realistic opportunity to intervene and prevent the harm committed by CONNELLY, JOHNSON and JENKINS

9

75)      SANDERS knew that WEST's constitutional rights against excessive force were being violated and he did not take reasonable steps to intervene.

76)      After looking through the window and taking no action, SANDERS left the area.

77)      After looking through the window, taking no action, and leaving the area, SANDERS took no action to inform others of what he observed and heard occurring in the room.

78)      While JOHNSON and JENKINS remained in the room with WEST, CONNELLY would periodically exit and re-enter the room.

79)      WEST was then removed from the room by JOHNSON, JENKINS and CONNELLY.

80)      Despite remaining in the room with JOHNSON, CONNELLY and WEST, JENKINS later swore under oath that she had left the room at a time prior to when WEST, CONNELLY and JOHNSON left the room.

81)      When WEST was taken out of the room, she was later escorted to the nurse.

82)      After WEST was completed with the nurse, she was taken to a segregated cell where she was placed into a restriction suit where she was partially immobilized and which caused her to suffer extreme discomfort and pain, both physically and emotionally, throughout the time she had to wear it.

83)      WEST remained in the restriction suit and in segregation to on or about April 4, 2014, when she bonded from jail. Segregation caused her to suffer extreme discomfort and pain, both physically and emotionally.

84) When WEST was taken to the segregation cell she was provided with only two sanitary pads for use for the period from her placement into the segregation to the time she bonded on or about April 4, 2014.

85) As a result of being provided with only two sanitary pads and because she was not provided underwear, WEST's menstrual flow was not able to be absorbed by the sanitary pads and blood continued to flow onto her legs and elsewhere.

86) Deputies who were agents of the SHERIFF placed WEST into segregation and denied her underwear and adequate sanitary pads in retaliation for her actions which occurred with regard to LAWRENCE, JOHNSON, JENKINS and CONNELLY.

87) Pursuant to the Rules and Regulations and the Standard Operating Procedures (collectively "SOP") of the SHERIFF's Office, CONNELLY, LAWRENCE, JENKINS and JOHNSON were required to complete Use of Force reports by the end of shift. No one completed a report.

88) On or about April 8, 2018, WEST filed a complaint with the Internal Affairs division ("IA") of the SHERIFF. A sworn statement was taken of her by IA deputies of that section and her injuries were photographed.

89) Among the physical injuries, WEST severely suffered were severe bruises and contusions about her face and body.

90) On that same date, IA deputies went to the Pompano Beach jail where they obtained a copy of the video recording of the incident.

11

91)     As a result of the actions of the IA deputies in obtaining the recording, CONNELLY became aware of the IA investigation on that date.

92)     On that date CONNELLY had photographs taken of her leg which had a bruise which CONNELLY said occurred during the course of her interaction WEST. In addition, CONNELLY also claimed that she suffered injuries to her thumb and a cut lip. No photographs were taken of a thumb or her lip.

93)     At no time did CONNELLY exhibit any signs or symptoms of any injury. Nor did CONNELLY ever inform anyone of any injuries until on or about the time the photographs were taken.

94)     On April 9, 2014, CONNELLY, JOHNSON, and JENKINS were formally informed by IA of the official investigation. After they informed CONNELLY of the complaint, CONNELLY completed a probable cause affidavit.

95)     On April 10, 2014, CONNELLY, JENKINS and JOHNSON submitted their Use of Force Reports and Incident Reports. On April 12, 2014, LAWRENCE submitted his Use of Force Report and Incident Report.

96)     The reports completed by LAWRENCE, JOHNSON and JENKINS were virtually identical in wording to the report of CONNELLY and appears to be plagiarized.

97)     LAWRENCE, JOHNSON and JENKINS copied the reports prepared by CONNELLY.

98)     On April 9, 2014, CONNELLY completed a probable cause affidavit alleging that WEST had committed the criminal offenses of Battery on a Law Enforcement Officer and Obstruction of Justice with Violence.

99)     Pursuant to the Rules and Regulations and the Standard Operating Procedures (collectively "SOP") of the SHERIFF's Office, CONNELLY was required to complete forms reporting her alleged injury at or about the time of its occurrence. No form was ever completed; nor did CONNELLY ever begin completing any form.

100)    CONNELLY sent the probable cause affidavit and the photographs to the State Attorney's Office for the purpose of having criminal charges filed against WEST and to have WEST prosecuted, convicted and punished. The State Attorney refused to file charges against WEST.

101)    Pursuant to the SOP, Use of Force Reports shall be completed before the end of the shift in which the force was used.

102)    Pursuant to the SOP, a supervisor of the SHERIFF was required to ensure the Use of Force reports by CONNELLY, JOHNSON, LAWRENCE and JENKINS were completed by the end of their shifts and to review the same. No supervisor did so.

103)    The IA deputies failed to investigate the reason why the supervisor failed to ensure that CONNELLY, JOHNSON, LAWRENCE and JENKINS had not completed Use of Force Reports by the end of their shifts, nor why the supervisor did nothing regarding CONNELLY, JOHNSON, LAWRENCE and JENKINS not completing their Use of Force Reports until the IA deputies contacted CONNELLY, JOHNSON, LAWRENCE and JENKINS.

104)    The SHERIFF assigned a male deputy to photograph the injuries of WEST.

13

105)    Many of WEST's injuries including the bruises and contusions were covered by the restriction suit and were not visible. Despite the male deputy being aware of those injuries, the deputy made no effort to photograph those injuries including requesting that a female deputy assist him.

106)    IA deputies obtained a sworn statement from JENKINS regarding the incident. In that statement, JENKINS stated under oath that she did not see anyone strike WEST and that she left the room before CONNELLY and JENKINS and she did not know what occurred in the room after she left.

107)    IA deputies obtained a video recording which established that JENKINS had not left the room before WEST and JOHNSON exited which was contrary to the sworn statement of JOHNSON.

108)    The IA deputies intentionally chose to not show the video recording to JENKINS nor confront her in any manner regarding the contradiction between the video recording and her testimony.

109)    The issue whether JENKINS left the room before JOHNSON and WEST was of material importance because JENKINS' sworn testimony included her statements that she was incapable of seeing whether WEST was hit or struck during the period of time when WEST remained in the room.

110)    The SHERIFF took no disciplinary actions against DEFENDANTS CONNELLY, JOHNSON, JENKINS, LAWRENCE and SANDERS.

14

## COUNT 1
## <u>BATTERY CLAIM BY PLAINTIFF AGAINST DEFENDANT SHERIFF</u>

For her cause of action against DEFENDANT SHERIFF, in Count 1, PLAINTIFF states:

111)    PLAINTIFF realleges and adopts, as if fully set forth in Count 1, the allegations of paragraphs 1 through 110.

112)    At all times LAWRENCE, CONNELLY, JENKINS and JOHNSON were acting under the authority of the State of Florida and under color of law as a deputies of the SHERIFF, and in such capacity, as agents, servants, and employees of the SHERIFF. They acted within the course and scope of their employment.

113)    At all times, LAWRENCE, CONNELLY, JENKINS and JOHNSON commenced a course of conduct such that they intended to touch or make contact with PLAINTIFF's body, actually touched PLAINTIFF and the contact was harmful or offensive and occurred without PLAINTIFF's consent.

114)    At all times, LAWRENCE, CONNELLY, JENKINS and JOHNSON commenced a course of conduct such that their actions occurred with great force and excessive use of force causing PLAINTIFF severe bodily injury.

115)    While committing their acts, they did not act in bad faith, with malicious purpose, and in a manner exhibiting wanton and wilful disregard of PLAINTIFF's rights, safety or property.

116)    As a direct and proximate result of the excessive use of force, PLAINTIFF suffered grievously, has been brought into public scandal, and with great humiliation, mental suffering and damaged reputation.

117)     As a further direct and proximate result of the said excessive use of force, PLAINTIFF further suffered mental anguish, endured suffering and aggravation of his physical and mental condition and suffered a damaged reputation, physical harm, loss of capacity for the enjoyment of life, humiliation personally, and damage to her reputation.

WHEREFORE, PLAINTIFF prays:

a)     Judgment for compensatory damages in excess of $15,000 against DEFENDANT SHERIFF;

b)     Costs of suit;

c)     Trial by jury as to all issues so triable; and

d)     Such other relief as this Honorable Court may deem just and appropriate.


## COUNT 2
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS CLAIM BY PLAINTIFF AGAINST DEFENDANT SHERIFF

For her cause of action against DEFENDANT SHERIFF in Count 2, PLAINTIFF states:

118)     PLAINTIFF realleges and adopts, as if fully set forth in Count 2, the allegations of paragraphs 1-110.

119)     As a result of the actions of on or about April 2, 2014, PLAINTIFF suffered an impact, emotional distress and psychological trauma.

120)     At all times LAWRENCE, CONNELLY, JENKINS and JOHNSON were acting under the authority of the State of Florida and under color of law as deputies of the SHERIFF, and in such capacity, as agents, servants, and employees of the SHERIFF.

121)     At all times, LAWRENCE, CONNELLY, JENKINS and JOHNSON commenced a course of conduct such that their actions occurred with great force and excessive use of force causing PLAINTIFF severe bodily injury, psychological trauma and emotional distress

122)     The psychological trauma and emotional distress caused PLAINTIFF to suffer from severe depression and post-traumatic stress disorder and other physical injuries.

123)     As a direct and proximate result, PLAINTIFF suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, medical care and treatment, and aggravation of a previously existing condition. She suffered grievously, was brought into public scandal with great humiliation, endured emotional distress in the form of shame, humiliation, degradation, mental suffering and aggravation of her physical and mental condition and suffered damaged reputation. The losses and damages are either permanent or continuing in nature and PLAINTIFF will suffer the losses and damages in the future.

WHEREFORE, PLAINTIFF prays:

a)     Judgment for compensatory damages in excess of $15,000 against the SHERIFF;

b)     Cost of suit;

c)     Trial by jury as to issues so triable; and

d)     Such other relief as this Honorable Court may deem just and appropriate.

## COUNT 3
## BATTERY CLAIM BY PLAINTIFF AGAINST DEFENDANT CONNELLY

For her cause of action against DEFENDANT CONNELLY in Count 3, PLAINTIFF states:

124)    PLAINTIFF realleges and adopts, as if fully set forth in Count 3, the allegations of paragraphs 1-110.

125)    A battery is defined as an unlawfully touching or striking or the use of force against the person of another with the intention of bringing about a harmful or offensive contact or apprehension thereof.

126)    Alternatively to the allegations set forth in Count 1, if the battery committed by CONNELLY was committed outside the course and scope of CONNELLY's employment, or in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property, the conduct of CONNELLY occurred in her individual capacity.

127)    CONNELLY intentionally attacked and battered PLAINTIFF without provocation.

128)    CONNELLY committed said attack with the intent to cause harmful and offensive contact with PLAINTIFF.

129)    CONNELLY's physical contact with PLAINTIFF was harmful to PLAINTIFF.

130)    CONNELLY acted in bad faith, with malicious purpose, and in a manner exhibiting wanton and willful disregard of PLAINTIFF's rights, safety or property.

131)     At all times, CONNELLY commenced a course of conduct such that her actions occurred with great force and excessive use of force causing PLAINTIFF severe bodily injury, psychological trauma and emotional distress.

18

132) The psychological trauma and emotional distress caused PLAINTIFF to suffer from severe depression and post-traumatic stress disorder and other physical injuries.

133) As a direct and proximate result, PLAINTIFF suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, medical care and treatment, and aggravation of a previously existing condition. She suffered grievously, was brought into public scandal with great humiliation, endured emotional distress in the form of shame, humiliation, degradation, mental suffering and aggravation of her physical and mental condition and suffered damaged reputation. The losses and damages are either permanent or continuing in nature and PLAINTIFF will suffer the losses and damages in the future.

WHEREFORE, PLAINTIFF prays:

a) Judgment for compensatory damages and punitive damages in excess of $15,000 against CONNELLY;

b) Cost of suit;

c) Trial by jury as to issues so triable; and

d) Such other relief as this Honorable Court may deem just and appropriate.

## COUNT 4
## BATTERY CLAIM BY PLAINTIFF AGAINST DEFENDANT JENKINS

For her cause of action against DEFENDANT JENKINS in Count 4, PLAINTIFF states:

134) PLAINTIFF realleges and adopts, as if fully set forth in Count 4, the allegations of paragraphs 1-110.

135)   A battery is defined as an unlawfully touching or striking or the use of force against the person of another with the intention of bringing about a harmful or offensive contact or apprehension thereof.

136)   Alternatively to the allegations set forth in Count 1, if the battery committed by JENKINS was committed outside the course and scope of JENKINS' s employment, or in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property, the conduct of JENKINS occurred in her individual capacity.

137)   JENKINS intentionally attacked and battered PLAINTIFF without provocation.

138)   JENKINS committed said attack with the intent to cause harmful and offensive contact with PLAINTIFF.

139)   JENKINS' physical contact with PLAINTIFF was harmful to PLAINTIFF.

140)   JENKINS acted in bad faith, with malicious purpose, and in a manner exhibiting wanton and willful disregard of PLAINTIFF's rights, safety or property.

141)    At all times, JENKINS commenced a course of conduct such that her actions occurred with great force and excessive use of force causing PLAINTIFF severe bodily injury, psychological trauma and emotional distress.

142)   The psychological trauma and emotional distress caused PLAINTIFF to suffer from severe depression and post-traumatic stress disorder and other physical injuries.

143)   As a direct and proximate result, PLAINTIFF suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, medical care and treatment, and aggravation of a previously existing condition. She suffered

grievously, was brought into public scandal with great humiliation, endured emotional distress in the form of shame, humiliation, degradation, mental suffering and aggravation of her physical and mental condition and suffered damaged reputation. The losses and damages are either permanent or continuing in nature and PLAINTIFF will suffer the losses and damages in the future.

WHEREFORE, PLAINTIFF prays:

        a)     Judgment for compensatory damages and punitive damages in excess of $15,000 against JENKINS;

        b)     Cost of suit;

        c)     Trial by jury as to issues so triable; and

        d)     Such other relief as this Honorable Court may deem just and appropriate.

## COUNT 5
## BATTERY CLAIM BY PLAINTIFF AGAINST DEFENDANT JOHNSON

For her cause of action against DEFENDANT JOHNSON in Count 5, PLAINTIFF states:

144)    PLAINTIFF realleges and adopts, as if fully set forth in Count 5, the allegations of paragraphs 1-110.

145)    A battery is defined as an unlawfully touching or striking or the use of force against the person of another with the intention of bringing about a harmful or offensive contact or apprehension thereof.

146)    Alternatively to the allegations set forth in Count 1, if the battery committed by JOHNSON was committed outside the course and scope of JOHNSON' s employment, or in bad

faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property, the conduct of JOHNSON occurred in her individual capacity.

147)    JOHNSON intentionally attacked and battered PLAINTIFF without provocation.

148)    JOHNSON committed said attack with the intent to cause harmful and offensive contact with PLAINTIFF.

149)    JOHNSON's physical contact with PLAINTIFF was harmful to PLAINTIFF.

150)    JOHNSON acted in bad faith, with malicious purpose, and in a manner exhibiting wanton and willful disregard of PLAINTIFF's rights, safety or property.

151)    At all times, JOHNSON commenced a course of conduct such that her actions occurred with great force and excessive use of force causing PLAINTIFF severe bodily injury, psychological trauma and emotional distress.

152)    The psychological trauma and emotional distress caused PLAINTIFF to suffer from severe depression and post-traumatic stress disorder and other physical injuries.

153)    As a direct and proximate result, PLAINTIFF suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, medical care and treatment, and aggravation of a previously existing condition. She suffered grievously, was brought into public scandal with great humiliation, endured emotional distress in the form of shame, humiliation, degradation, mental suffering and aggravation of her physical and mental condition and suffered damaged reputation. The losses and damages are either permanent or continuing in nature and PLAINTIFF will suffer the losses and damages in the future.

WHEREFORE, PLAINTIFF prays:

a)      Judgment for compensatory damages and punitive damages in excess of $15,000 against JOHNSON;

b)      Cost of suit;

c)      Trial by jury as to issues so triable; and

d)      Such other relief as this Honorable Court may deem just and appropriate.


**COUNT 6**
**BATTERY CLAIM BY PLAINTIFF AGAINST DEFENDANT LAWRENCE**

For her cause of action against DEFENDANT LAWRENCE in Count 6, PLAINTIFF states:

154)    PLAINTIFF realleges and adopts, as if fully set forth in Count 6, the allegations of paragraphs 1-110.

155)    A battery is defined as an unlawfully touching or striking or the use of force against the person of another with the intention of bringing about a harmful or offensive contact or apprehension thereof.

156)    Alternatively to the allegations set forth in Count 1, if the battery committed by LAWRENCE was committed outside the course and scope of LAWRENCE's employment, or in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property, the conduct of LAWRENCE occurred in his individual capacity.

157)    LAWRENCE intentionally attacked and battered PLAINTIFF without provocation.

158)    LAWRENCE committed said attack with the intent to cause harmful and offensive contact with PLAINTIFF.

23

159)    LAWRENCE's physical contact with PLAINTIFF was harmful to PLAINTIFF.

160)    LAWRENCE acted in bad faith, with malicious purpose, and in a manner exhibiting wanton and willful disregard of PLAINTIFF's rights, safety or property.

161)    At all times, LAWRENCE commenced a course of conduct such that his actions occurred with great force and excessive use of force causing PLAINTIFF severe bodily injury, psychological trauma and emotional distress.

162)    The psychological trauma and emotional distress caused PLAINTIFF to suffer from severe depression and post-traumatic stress disorder and other physical injuries.

163)    As a direct and proximate result, PLAINTIFF suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, medical care and treatment, and aggravation of a previously existing condition. She suffered grievously, was brought into public scandal with great humiliation, endured emotional distress in the form of shame, humiliation, degradation, mental suffering and aggravation of her physical and mental condition and suffered damaged reputation. The losses and damages are either permanent or continuing in nature and PLAINTIFF will suffer the losses and damages in the future.

WHEREFORE, PLAINTIFF prays:

a)    Judgment for compensatory damages and punitive damages in excess of $15,000 against LAWRENCE;

b)    Cost of suit;

c)    Trial by jury as to issues so triable; and

d)    Such other relief as this Honorable Court may deem just and appropriate.

24

**COUNT 7**
**42 U.S.C. § 1983 VIOLATION OF FOURTH AMENDMENT CIVIL RIGHTS**
**EXCESSIVE FORCE - DEFENDANT CONNELLY**

For her cause of action against DEFENDANT CONNELLY in Count 7, PLAINTIFF states:

164)    PLAINTIFF realleges and adopts, as if fully set forth in Count 7, the allegations of paragraphs 1-110.

165)    This cause of action is brought by the PLAINTIFF against DEFENDANT CONNELLY for deprivation of constitutional rights within the meaning of 42 U.S.C. § 1983.

166)    While DEFENDANT CONNELLY was acting under the authority of the State of Florida and under color of law as a deputy in the employ of DEFENDANT SHERIFF, she subjected the PLAINTIFF to the deprivation of the rights and privileges secured to her by the Constitution of the United States to be secure in her person against the use of excessive force under the Fourth and Fourteenth Amendments within the meaning of 42 U.S.C. § 1983.

167)    With regard to the violations of the constitutional rights of PLAINTIFF as alleged in this count, the actions of DEFENDANT CONNELLY were done with malicious intent, ill will, spite, intent to injure, evil motive, wickedness, formed design to injure or oppress PLAINTIFF and were done with a reckless or callous indifference to PLAINTIFF's federally protected rights entitling PLAINTIFF to an award of punitive damages against CONNELLY in her individual capacity.

168)    As a direct and proximate result of the above-mentioned unconstitutional acts of DEFENDANT CONNELLY, PLAINTIFF suffered mental anguish, loss of capacity for the enjoyment of life, physical injury, humiliation personally, and loss of her freedom and civil rights. She suffered grievously, was brought into public scandal with great humiliation, endured mental

suffering and aggravation of her physical and mental condition and suffered a damaged reputation as well as damage to her property.

WHEREFORE, THE PLAINTIFF prays:

a)    Judgment against DEFENDANT CONNELLY for compensatory and punitive damages;

b)    Costs of suit;

c)    Reasonable attorney's fees, pursuant to 42 U.S.C. § 1988;

d)    Trial by jury as to all issues so triable; and

e)    Such other relief as its Honorable Court may deem just and appropriate

.

## COUNT 8
## 42 U.S.C. § 1983 VIOLATION OF FOURTH AMENDMENT CIVIL RIGHTS
## EXCESSIVE FORCE - DEFENDANT JOHNSON

For her cause of action against DEFENDANT JOHNSON in Count 8, PLAINTIFF states:

169)    PLAINTIFF realleges and adopts, as if fully set forth in Count 8, the allegations of paragraphs 1-110.

170)    This cause of action is brought by the PLAINTIFF against DEFENDANT JOHNSON for deprivation of constitutional rights within the meaning of 42 U.S.C. § 1983.

171)    While DEFENDANT JOHNSON was acting under the authority of the State of Florida and under color of law as a deputy in the employ of DEFENDANT SHERIFF, she subjected the PLAINTIFF to the deprivation of the rights and privileges secured to her by the Constitution of

26

the United States to be secure in her person against the use of excessive force under the Fourth and Fourteenth Amendments within the meaning of 42 U.S.C. § 1983.

172)    With regard to the violations of the constitutional rights of PLAINTIFF as alleged in this count, the actions of DEFENDANT JOHNSON were done with malicious intent, ill will, spite, intent to injure, evil motive, wickedness, formed design to injure or oppress PLAINTIFF and were done with a reckless or callous indifference to PLAINTIFF's federally protected rights entitling PLAINTIFF to an award of punitive damages against JOHNSON in her individual capacity.

173)    As a direct and proximate result of the above-mentioned unconstitutional acts of DEFENDANT JOHNSON, PLAINTIFF suffered mental anguish, loss of capacity for the enjoyment of life, physical injury, humiliation personally, and loss of her freedom and civil rights. She suffered grievously, was brought into public scandal with great humiliation, endured mental suffering and aggravation of her physical and mental condition and suffered a damaged reputation as well as damage to her property.

WHEREFORE, THE PLAINTIFF prays:

a)    Judgment against DEFENDANT JOHNSON for compensatory and punitive damages;

b)    Costs of suit;

c)    Reasonable attorney's fees, pursuant to 42 U.S.C. § 1988;

d)    Trial by jury as to all issues so triable; and

e)    Such other relief as its Honorable Court may deem just and appropriate.

27

## COUNT 9
## 42 U.S.C. § 1983 VIOLATION OF FOURTH AMENDMENT CIVIL RIGHTS
## EXCESSIVE FORCE - DEFENDANT JENKINS

For her cause of action against DEFENDANT JENKINS in Count 9, PLAINTIFF states:

174)    PLAINTIFF realleges and adopts, as if fully set forth in Count 9, the allegations of paragraphs 1-110.

175)    This cause of action is brought by the PLAINTIFF against DEFENDANT JENKINS for deprivation of constitutional rights within the meaning of 42 U.S.C. § 1983.

176)    While DEFENDANT JENKINS was acting under the authority of the State of Florida and under color of law as a deputy in the employ of DEFENDANT SHERIFF, she subjected the PLAINTIFF to the deprivation of the rights and privileges secured to her by the Constitution of the United States to be secure in her person against the use of excessive force under the Fourth and Fourteenth Amendments within the meaning of 42 U.S.C. § 1983.

177)    With regard to the violations of the constitutional rights of PLAINTIFF as alleged in this count, the actions of DEFENDANT JENKINS were done with malicious intent, ill will, spite, intent to injure, evil motive, wickedness, formed design to injure or oppress PLAINTIFF and were done with a reckless or callous indifference to PLAINTIFF's federally protected rights entitling PLAINTIFF to an award of punitive damages against JENKINS in her individual capacity.

178)    As a direct and proximate result of the above-mentioned unconstitutional acts of DEFENDANT JENKINS, PLAINTIFF suffered mental anguish, loss of capacity for the enjoyment of life, physical injury, humiliation personally, and loss of her freedom and civil rights. She suffered grievously, was brought into public scandal with great humiliation, endured mental suffering and

28

aggravation of her physical and mental condition and suffered a damaged reputation as well as damage to her property.

WHEREFORE, THE PLAINTIFF prays:

a)      Judgment against DEFENDANT JENKINS for compensatory and punitive damages;

b)      Costs of suit;

c)      Reasonable attorney's fees, pursuant to 42 U.S.C. § 1988;

d)      Trial by jury as to all issues so triable; and

e)      Such other relief as its Honorable Court may deem just and appropriate.

**COUNT 10**
**42 U.S.C. § 1983 VIOLATION OF FOURTH AMENDMENT CIVIL RIGHTS**
**EXCESSIVE FORCE - DEFENDANT LAWRENCE**

For her cause of action against DEFENDANT LAWRENCE in Count 10, PLAINTIFF states:

179)    PLAINTIFF realleges and adopts, as if fully set forth in Count 10, the allegations of paragraphs 1-110.

180)    This cause of action is brought by the PLAINTIFF against DEFENDANT LAWRENCE for deprivation of constitutional rights within the meaning of 42 U.S.C. § 1983.

181)    While DEFENDANT LAWRENCE was acting under the authority of the State of Florida and under color of law as a deputy in the employ of DEFENDANT SHERIFF, he subjected the PLAINTIFF to the deprivation of the rights and privileges secured to her by the Constitution of

29

the United States to be secure in her person against the use of excessive force under the Fourth and Fourteenth Amendments within the meaning of 42 U.S.C. § 1983.

182)    With regard to the violations of the constitutional rights of PLAINTIFF as alleged in this count, the actions of DEFENDANT LAWRENCE were done with malicious intent, ill will, spite, intent to injure, evil motive, wickedness, formed design to injure or oppress PLAINTIFF and were done with a reckless or callous indifference to PLAINTIFF's federally protected rights entitling PLAINTIFF to an award of punitive damages against LAWRENCE in her individual capacity.

183)    As a direct and proximate result of the above-mentioned unconstitutional acts of DEFENDANT LAWRENCE, PLAINTIFF suffered mental anguish, loss of capacity for the enjoyment of life, physical injury, humiliation personally, and loss of her freedom and civil rights. She suffered grievously, was brought into public scandal with great humiliation, endured mental suffering and aggravation of her physical and mental condition and suffered a damaged reputation as well as damage to her property.

WHEREFORE, THE PLAINTIFF prays:

a)    Judgment against DEFENDANT LAWRENCE for compensatory and punitive damages;

b)    Costs of suit;

c)    Reasonable attorney's fees, pursuant to 42 U.S.C. § 1988;

d)    Trial by jury as to all issues so triable; and

e)    Such other relief as its Honorable Court may deem just and appropriate.

**COUNT11**
**42 U.S.C. § 1983 VIOLATION OF CIVIL RIGHTS CLAIM BY USE OF EXCESSIVE FORCE (FIRST AMENDMENT RETALIATION) BY PLAINTIFF AGAINST DEFENDANT CONNELLY**

For her cause of action against DEFENDANT CONNELLY in Count 11, PLAINTIFF states:

184)    PLAINTIFF realleges and adopts, as if fully set forth in Count 11, the allegations of paragraphs 1-110.

185)    This cause of action is brought by the PLAINTIFF against DEFENDANT CONNELLY for deprivation of constitutional rights within the meaning of 42 U.S.C. § 1983.

186)    DEFENDANT CONNELLY proximately caused PLAINTIFF to suffer injuries from the use of severe, violent, unnecessary and excessive force upon her without cause nor justification.

187)    While DEFENDANT CONNELLY was acting under the authority of the State of Florida and under color of law as a deputy in the employ of DEFENDANT SHERIFF, she subjected the PLAINTIFF to the deprivation of the rights and privileges secured to her by the Constitution of the United States to be secure in her person against the use of excessive force under the Fourth Amendment within the meaning of 42 U.S.C. § 1983.

188)    With regard to the violations of the constitutional rights of PLAINTIFF as alleged in this count, the actions of DEFENDANT CONNELLY were done with malicious intent, ill will, spite, intent to injure, evil motive, wickedness, formed design to injure or oppress PLAINTIFF and were done with a reckless or callous indifference to PLAINTIFF's federally protected rights entitling PLAINTIFF to an award of punitive damages against CONNELLY in her individual capacity.

31

189)    DEFENDANT CONNELLY's use of excessive force on PLAINTIFF was in retaliation for PLAINTIFF's protected speech and rights under the First Amendment.

190)    The use of the severe, violent, unnecessary and excessive force upon PLAINTIFF occurred without cause nor justification.

191)    The conduct of DEFENDANT CONNELLY towards PLAINTIFF constitutes unlawful retaliation in violation of PLAINTIFF's clearly established rights under the First and Fourteenth Amendments, and 42 U.S.C. § 1983.

192)    As a direct and proximate result of the acts described above, PLAINTIFF suffered great humiliation, mental suffering, and damaged reputation.

193)    As a further direct and proximate result of the conduct of DEFENDANT CONNELLY, PLAINTIFF suffered loss of her liberty and freedom, mental anguish, and loss of capacity for the enjoyment of life. PLAINTIFF's losses are either permanent or continuing and PLAINTIFF will suffer the losses in the future, in violation of PLAINTIFF's civil rights.

WHEREFORE, PLAINTIFF prays:

a)    Judgment for compensatory damages and punitive damages against CONNELLY;

b)    Cost of suit;

c)    Reasonable attorney's fees, pursuant to 42 U.S.C. § 1988;

d)    Trial by jury as to all issues so triable; and

e)    Such other relief as this Honorable Court may deem just and appropriate.

32

**COUNT 12**
**42 U.S.C. § 1983 CIVIL RIGHTS VIOLATION**
**FAILURE TO INTERVENE BY PLAINTIFF AGAINST DEFENDANT JENKINS**

For her cause of action against DEFENDANT JENKINS in Count 12, PLAINTIFF states:

194)    PLAINTIFF realleges and adopts, as if fully set forth in Count 12, the allegations of paragraphs 1-110.

195)    This cause of action is brought by WEST against JENKINS for her failure to intervene to prevent CONNELLY and JOHNSON from violating the constitutional rights of WEST.

196)    Law enforcement officers have an affirmative duty to intervene when the officers are aware of constitutional violations in their presence and must take reasonable steps to protect the victim of another officer's use of excessive force.

197)    JENKINS failed to prevent excessive force from being committed against WEST when she had a reasonable opportunity to do so. JENKINS' failure to intervene is a violation of the Fourth Amendment and as such is actionable under 42 U.S.C. § 1983.

198)    As a direct and proximate cause of JENKINS' failure to intervene, WEST's constitutionally protected civil rights were violated and she suffered damages, physical injury, pain and suffering, mental anguish, emotional distress, and loss of capacity for the enjoyment of life.

WHEREFORE, PLAINTIFF prays:

a)    Judgment for compensatory damages and punitive damages against JENKINS;

b)    Cost of suit;

c)    Reasonable attorney's fees, pursuant to 42 U.S.C. § 1988;

d)    Trial by jury as to all issues so triable; and

e)      Such other relief as this Honorable Court may deem just and appropriate.

**COUNT 13**
**42 U.S.C. § 1983 CIVIL RIGHTS VIOLATION**
**FAILURE TO INTERVENE BY PLAINTIFF AGAINST DEFENDANT JOHNSON**

For her cause of action against DEFENDANT JOHNSON in Count 13, PLAINTIFF states:

199)    PLAINTIFF realleges and adopts, as if fully set forth in Count 13, the allegations of paragraphs 1-110.

200)    This cause of action is brought by WEST against JOHNSON for her failure to intervene to prevent CONNELLY and JENKINS from violating the constitutional rights of WEST.

201)    Law enforcement officers have an affirmative duty to intervene when the officers are aware of constitutional violations in their presence and must take reasonable steps to protect the victim of another officer's use of excessive force.

202)    JOHNSON failed to prevent excessive force from being committed against WEST when she had a reasonable opportunity to do so. JOHNSON's failure to intervene is a violation of the Fourth Amendment and as such is actionable under 42 U.S.C. § 1983.

203)    As a direct and proximate cause of JOHNSON's failure to intervene, WEST's constitutionally protected civil rights were violated and she suffered damages, physical injury, pain and suffering, mental anguish, emotional distress, and loss of capacity for the enjoyment of life.

WHEREFORE, PLAINTIFF prays:

a)      Judgment for compensatory damages and punitive damages against JOHNSON;

34

b)      Cost of suit;

c)      Reasonable attorney's fees, pursuant to 42 U.S.C. § 1988;

d)      Trial by jury as to all issues so triable; and

e)      Such other relief as this Honorable Court may deem just and appropriate.

**COUNT 14**
**42 U.S.C. § 1983 CIVIL RIGHTS VIOLATION**
**FAILURE TO INTERVENE BY PLAINTIFF AGAINST DEFENDANT LAWRENCE**

For her cause of action against DEFENDANT LAWRENCE in Count 14, PLAINTIFF states:

204)    PLAINTIFF realleges and adopts, as if fully set forth in Count 14, the allegations of paragraphs 1-110.

205)    This cause of action is brought by WEST against LAWRENCE for his failure to intervene to prevent CONNELLY, JENKINS and JOHNSON from violating the constitutional rights of WEST.

206)    Law enforcement officers have an affirmative duty to intervene when the officers are aware of constitutional violations in their presence and must take reasonable steps to protect the victim of another officer's use of excessive force.

207)    LAWRENCE failed to prevent excessive force from being committed against WEST when he had a reasonable opportunity to do so. LAWRENCE's failure to intervene is a violation of the Fourth Amendment and as such is actionable under 42 U.S.C. § 1983.

35

208)   As a direct and proximate cause of LAWRENCE's failure to intervene, WEST's constitutionally protected civil rights were violated and she suffered damages, physical injury, pain and suffering, mental anguish, emotional distress, and loss of capacity for the enjoyment of life.

WHEREFORE, PLAINTIFF prays:

a)   Judgment for compensatory damages and punitive damages against LAWRENCE;

b)   Cost of suit;

c)   Reasonable attorney's fees, pursuant to 42 U.S.C. § 1988;

d)   Trial by jury as to all issues so triable; and

e)   Such other relief as this Honorable Court may deem just and appropriate.

**COUNT 15**
**42 U.S.C. § 1983 CIVIL RIGHTS VIOLATION**
**FAILURE TO INTERVENE BY PLAINTIFF AGAINST DEFENDANT SANDERS**

For her cause of action against DEFENDANT SANDERS in Count 15, PLAINTIFF states:

209)   PLAINTIFF realleges and adopts, as if fully set forth in Count 15, the allegations of paragraphs 1-110.

210)   This cause of action is brought by WEST against SANDERS for his failure to intervene to prevent CONNELLY, JENKINS and JOHNSON from violating the constitutional rights of WEST.

211)    Law enforcement officers have an affirmative duty to intervene when the officers are aware of constitutional violations in their presence and must take reasonable steps to protect the victim of another officer's use of excessive force.

212)    SANDERS failed to prevent excessive force from being committed against WEST when he had a reasonable opportunity to do so. SANDERS' failure to intervene is a violation of the Fourth Amendment and as such is actionable under 42 U.S.C. § 1983.

213)    As a direct and proximate cause of SANDERS' failure to intervene, WEST's constitutionally protected civil rights were violated and she suffered damages, physical injury, pain and suffering, mental anguish, emotional distress, and loss of capacity for the enjoyment of life.

WHEREFORE, PLAINTIFF prays:

a)    Judgment for compensatory damages and punitive damages against SANDERS;

b)    Cost of suit;

c)    Reasonable attorney's fees, pursuant to 42 U.S.C. § 1988;

d)    Trial by jury as to all issues so triable; and

e)    Such other relief as this Honorable Court may deem just and appropriate.


**COUNT 16**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**DEFENDANTS CONNELLY, JOHNSON, JENKINS AND LAWRENCE**

For her cause of action against DEFENDANTS CONNELLY, JOHNSON, JENKINS AND LAWRENCE in Count 16, PLAINTIFF states:

214)    PLAINTIFF realleges and adopts, as if fully set forth in Count 16, the allegations of paragraphs 1 through 110.

215)    As a result of the actions of on or about April 2, 2014, PLAINTIFF suffered an impact, emotional distress and psychological trauma.

216)     At all times, LAWRENCE, CONNELLY, JENKINS and JOHNSON commenced a course of conduct such that their actions occurred with great force and excessive use of force causing PLAINTIFF severe bodily injury, psychological trauma and emotional distress

217)    Alternatively to the allegations set forth in Count 2, if the said course of conduct committed by LAWRENCE, CONNELLY, JENKINS and JOHNSON was committed outside the course and scope of their employment, or in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property, the conduct of LAWRENCE, CONNELLY, JENKINS and JOHNSON occurred in their individual capacities

218)    The actions of DEFENDANTS CONNELLY, JOHNSON, JENKINS AND LAWRENCE were so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, as to be regarded as atrocious, and utterly intolerable in a civilized community.

219)    These actions constitute a case in which the recitation of the facts to the average member of the community would arouse resentment against the actors, and lead him to exclaim "Outrageous!"

220)    These actions constitute either the intentional or reckless infliction of mental suffering.

221)    As a direct and proximate result, PLAINTIFF suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, medical care and treatment, and aggravation of a previously existing condition. She suffered grievously, was brought into public scandal with great humiliation, endured emotional distress in the form of shame, humiliation, degradation, mental suffering and aggravation of her physical and mental condition and suffered damaged reputation. The losses and damages are either permanent or continuing in nature and PLAINTIFF will suffer the losses and damages in the future.

WHEREFORE, PLAINTIFF prays in regard to DEFENDANTS CONNELLY, JOHNSON, JENKINS AND LAWRENCE:

   a)    Judgment for compensatory and punitive damages in excess of $15,000;

   b)    Costs of suit;

   c)    Trial by jury as to issues so triable;

   d)    Judgment for punitive damages; and

   e)    Such other relief as this Honorable Court may deem just and appropriate.

**GARY KOLLIN, P.A.**
Attorney for Plaintiff
1856 N. Nob Hill Road, #140
Fort Lauderdale, Florida 33322
Tel:    (954) 723-9999
Fax:    (954) 791-6565
garykollin@garykollinlaw.com
pleadings@garykollinlaw.com

s/ Gary Kollin
Fla. Bar.# 282431